BERNARD HURTIG and HELEN HURTIG, Husband and Wife, Plaintiffs, *v.* TERMINIX WOOD TREATING & CONTRACTING CO., LTD., a Hawaii corporation, TERMINIX INTERNATIONAL, a Tennessee corporation, RODNEY C. AOKI, Defendants, and TERMINIX WOOD TREATING & CONTRACTING CO., LTD., Respondent and Third-Party Plaintiff-Appellee, *v.* HAWAIIAN INSURANCE & GUARANTY COMPANY, LIMITED and UNITED NATIONAL INSURANCE COMPANY, LIMITED both dba Hawaii Insurance Companies, Petitioners and Third-Party Defendants-Appellants

NO. 9521

(CIVIL NO. 65335)

DECEMBER 21, 1984

LUM, C.J., NAKAMURA, PADGETT, HAYASHI AND WAKATSUKI, JJ.

OPINION OF THE COURT BY HAYASHI, J.

Petitioners, Hawaiian Insurance & Guaranty Company, Limited and United National Insurance Company Limited (Insurers) filed for a writ of certiorari claiming error by the Intermediate Court of Appeals. We granted certiorari.

Defendant, Terminix Wood Treating & Contracting Co., Ltd. (Terminix) entered into a contract for the inspection and treatment for termites of the home owned by plaintiffs, Bernard and Helen Hurtig (Hurtigs). Some time after Terminix finished the treat-

ment, the Hurtigs sued Terminix claiming that it failed to correctly perform the contract which had led to termite damage to the house. Terminix brought a third-party complaint against Insurers claiming that Insurers must defend and indemnify Terminix in the law suit. Terminix moved for summary judgment on the issue of Insurers coverage under the policy. The trial court granted the motion for summary judgment. The Intermediate Court of Appeals affirmed the trial court's decision.

Insurers claim that exclusion (o) of the insurance contract excludes coverage for the damage to the Hurtigs' house. Exclusion (o) provides that the insurance does not apply "to property damage to work performed by or on behalf of the named insured arising out of the work or any portion thereof, or out of materials, parts or equipment furnished in connection therewith. . . ." Both the trial court and the Intermediate Court of Appeals were correct in holding that exclusion (o) does not provide for exclusion of coverage in this case.

It has long been recognized in this state that insurance policies must be construed liberally in favor of coverage because they are contracts of adhesion. *Sturla, Inc. v. Fireman's Fund Insurance Co.,* 67 Haw. 203, ___, 684 P.2d 960, 964 (1984). Therefore, coverage exists under the policy unless the exclusions clearly provide otherwise. Exclusion (o) only excludes "property damage to work performed." Insurers claim that the work performed is a termite free home. They conclude that exclusion (o) excludes property damage to the home. We disagree.

*Webster's Third New International Dictionary* 1678 (unabridged ed. 1976) defines "perform" as, "to carry out an action or pattern of behavior: fulfill a threat or promise." The work that Terminix carried out was inspection of the house and application of chemicals. Terminix did not carry out a termite free house. Therefore, exclusion (o) must be held to only exclude damages to the inspection and application of chemicals. There was no damage to the inspection, application or the chemicals.

Further, we have previously interpreted exclusion (o) contrary to Insurers' interpretation. In *Sturla,* we said that when paragraph (a) which provides coverage for a breach of an implied warranty is " 'considered with exclusion . . . [(o) in the instant case] it clearly

appears that property damage claims of third persons resulting from the insured's breach of an implied warranty are covered unless the claimed loss is confined to the insured's own work or work product.'" 67 Haw. at ____, 684 P.2d at 965 (quoting *Haugan v. Home Indemnity Co.,* 86 S.D. 406, 413, 197 N.W.2d 18, 22 (1972)). Thus, exclusion (o) only excludes loss confined to the insured's own work or work product. In *Sturla,* we held that there was no coverage because the loss sought was for the uneven fading of the carpet sold by Sturla, Inc. The "claimed loss [was] confined to the insured's own work or work product." *Haugan,* 86 S.D. at 413, 197 N.W.2d at 22.

In the present case, the claimed loss was not confined to Terminix's own work or work product. According to the contract, Terminix agreed to "inspect and treat subterranean termites...." The loss was not to the inspection or treatment. The loss exceeded the inspection and treatment and went to the home itself.

Affirmed.

*John T. Komeiji (Bert T. Kobayashi, Jr.* with him on the supplemental brief; *Kobayashi, Watanabe, Sugita & Kawashima* of counsel) for petitioners and third-party defendants-appellants.

*Richard F. Dvonch* (Law Offices of *Vernon T. Tashima* of counsel) for respondent and third-party plaintiff-appellee.


DISSENTING OPINION OF NAKAMURA, J.,
WITH WHOM WAKATSUKI, J., JOINS

A scant six months ago, we said the "business risk" exclusions of a comprehensive general liability insurance policy "were clearly meant to negate coverage for the contractual liability of the insured 'as a source of goods or services . . . to make good on products or work which is defective or otherwise unsuitable because it is lacking in some capacity.' Henderson, *Insurance Protection for Products Liability and Completed Operations – What Every Lawyer Should Know,* 50 Neb. L. Rev. 415, 441 (1971)." *Sturla, Inc. v. Fireman's Fund Insurance Co.,* 67 Haw. 203, 208-09, 684 P.2d 960, 963 (1984). Thus, we ruled that Fireman's Fund was not obligated to defend a suit brought against Sturla, a carpet distributor, by a dissatisfied cus-

tomer. The court now agrees with the Intermediate Court of Appeals that a policy with identical exclusions covers the liability of Terminix Wood Treating & Contracting Co., Ltd. "for damages caused by [an] inadequate performance of its [contractual] obligation to inspect and treat [Bernard and Helen Hurtig's house] against subterranean termites." *Hurtig v. Terminix Wood Treating & Contracting Co.*, 5 Haw. App. ___, ___, 685 P.2d 799, 800 (1984).[1] The distinction drawn by my colleagues between Sturla's failure to supply a carpet fit for its intended purpose and Terminix's non-fulfillment of a promise to eradicate ground termites escapes me, and I do not join in their opinion.

## I.

Reading Exclusion (o) of a standard form comprehensive general liability insurance policy literally, the majority concludes Hawaiian Insurance & Guaranty Company, Limited and United National Insurance Company, Limited are responsible for the loss sustained by the Hurtigs when Terminix "failed to correctly perform" a contract to inspect their house and treat it for termite infestation. The exclusion, the court concludes, is inapplicable here because the loss claimed by the Hurtigs "exceeded the inspection and treatment and went to the home itself." *Sturla,* it states, was a case where the claimed loss was confined to the insured's own work or work product.

But in *Sturla* we carefully marked out the boundaries between "business risks" and occurrences giving rise to liability covered under a 'comprehensive general liability policy. We said "the risks insured by the standard form policy are 'injury to people and damage to property *caused* by [a] faulty [product or] workmanship.' " *Sturla, Inc. v. Fireman's Fund Insurance Co.,* 67 Haw. at 210, 684 P.2d

---

[1] The contractual arrangement for the inspection of the house and treatment for termite infestation commenced in 1971 when the Hurtigs purchased their house. The original contract was renewed annually, the last agreement being effective for a one-year period beginning in July of 1979. The suit was filed in April of 1980.

at 964 (emphasis in original) (quoting *Weedo v. Stone-E-Brick, Inc.*, 81 N.J. 233, 239, 405 A.2d 788, 791 (1979)). We went so far as to provide an example of the essential difference between an insured and uninsured risk by quoting from the New Jersey court's opinion to this effect.

> An illustration of this fundamental point may serve to mark the boundaries between "business risks" and occurrences giving rise to insurable liability. When a craftsman applies stucco to an exterior wall of a home in a faulty manner and discoloration, peeling and chipping result, the poorly-performed work will perforce have to be replaced or repaired by the tradesman or by a surety. On the other hand, should the stucco peel and fall from the wall, and thereby cause injury to the homeowner or his neighbor standing below or to a passing automobile, an occurrence of harm arises which is the proper subject of risk-sharing as provided by the type of policy before us in this case. The happenstance and extent of the latter liability is entirely unpredictable — the neighbor could suffer a scratched arm or a fatal blow to the skull from the peeling stonework. Whether the liability of the businessman is predicated upon warranty theory or, preferably and more accurately, upon tort concepts, injury to persons and damage to other property constitute the risks intended to be covered under the CGL.

*Id.* at 210 n.6, 684 P.2d at 964-65 n.6 (quoting *Weedo v. Stone-E-Brick, Inc.*, 81 N.J. at 240-41, 405 A.2d at 791-92).

"As we . . . endeavored to make clear, the policy in question does not cover an accident of faulty workmanship but rather faulty workmanship which causes an accident." *Weedo v. Stone-E-Brick, Inc.*, 81 N.J. at 249, 405 A.2d at 796 (citations omitted). And since the gravamen of the Hurtigs' suit consisted of allegations of an inadequate performance of a contractual obligation and the complaint contained no averment that the neglect caused an accident resulting in personal injury or damage to other property, the policy did not protect the contractor in the situation at hand.

## II.

Granted, insurance policies are contracts of adhesion that should be construed liberally in favor of the insured. *Sturla, Inc. v.*

*Fireman's Fund Insurance Co.,* 67 Haw. at 209, 684 P.2d at 964. But "what we are committed to enforce are '[t]he objectively reasonable expectations of applicants and intended beneficiaries regarding the terms of insurance contracts.' Keeton, *Insurance Law Rights at Variance With Policy Provisions,* 83 Harv. L. Rev. 961, 967 (1970)." *Id.* at 210, 684 P.2d at 964.

The qualifications on coverage imposed by the "business risk" exclusions are such that the terms of the insurance contract in question could not have given rise to an objectively reasonable expectation of protection against a claim that the service rendered by Terminix was not that for which the Hurtigs bargained. To hold otherwise would compel an insurance carrier to assume the "business risks" of an insured; it would make the insurer a guarantor of adequate performance of contractual obligations and transmute a liability policy into a performance bond.