915 P.2d 704

**Mazie K. HIRONO,[1] Lieutenant Governor, State of Hawai'i, in her Capacity as the Chief Election Officer, Plaintiff–Appellee,**

**v.**

**George G. PEABODY, Defendant–Appellant.**

No. 18386.

Supreme Court of Hawai'i.

April 17, 1996.

1. This action was initially instituted by verified complaint filed August 16, 1994, by Benjamin J. Cayetano, then-Lieutenant Governor and Chief Election Officer of the State of Hawai'i. In the November 1994 general election, Cayetano was elected Governor, and Mazie K. Hirono was elected Lieutenant Governor. Pursuant to Hawai'i Rules of Appellate Procedure (HRAP) Rule 43(c)(1), Hirono has been substituted automatically for Cayetano as plaintiff in the present case.

George G. Peabody, on the briefs, Kaunakakai, Molokai, pro se.

Robert A. Marks, Former Attorney General, and Russell A. Suzuki and Winfred K.T. Pong, Deputy Attorneys General, on the briefs, Honolulu, for plaintiff-appellee.

Before MOON, C.J., and KLEIN, LEVINSON, NAKAYAMA and RAMIL, JJ.

MOON, Chief Justice.

Defendant-appellant George G. Peabody appeals from the judgment of the Second Circuit Court, entered in favor of plaintiff-appellee Mazie K. Hirono, Lieutenant Governor, in her capacity as chief election officer for the State of Hawai'i, which disqualified Peabody as a Libertarian party candidate for the office of governor of the State of Hawai'i. The Lieutenant Governor had objected to Peabody's nomination papers and brought this action to disqualify Peabody as a candidate because no one from the Libertarian party had filed nomination papers to run for the office of lieutenant governor.

On appeal, Peabody argues that the circuit court erred in upholding his disqualification because Hawai'i law does not require that there be a candidate for lieutenant governor from the same party in order for the name of a candidate for governor to be placed on the ballot. For the following reasons, we affirm the judgment of the circuit court.

## I. BACKGROUND

On May 27, 1994, Peabody filed his nomination papers with the Office of the Lieutenant Governor as a Libertarian party candidate for the office of governor of the State of Hawai'i. Pursuant to Hawai'i Revised Statutes (HRS) § 12-6 (1993),[2] the deadline for the filing of nomination papers for the office of governor and lieutenant governor was July 19, 1994.

By the time the deadline for the filing of nomination papers had passed, no person had filed nomination papers as a Libertarian candidate for the office of lieutenant governor. By certified mail addressed to Peabody, dated August 5, 1994, the Lieutenant Governor, pursuant to HRS § 12-8(a) (1993),[3] objected in writing to the nomination papers filed by Peabody on the ground that no person from the Libertarian Party had filed nomination papers for the office of lieutenant governor by the July 19, 1994 deadline. By letter dated August 10, 1994, Peabody responded to the Lieutenant Governor's objection, and by certified mail addressed to Peabody, dated August 12, 1994, Peabody was notified of the Lieutenant Governor's preliminary decision that, pursuant to article V, section 2 of the

---

**2.** HRS § 12-6 provides in pertinent part:

**Nomination papers: time for filing; fees.** (a) Nomination papers shall be filed as follows: for members of Congress, state, and county offices ... not later than 4:30 p.m. on the sixtieth calendar day prior to the primary, special primary, or special election provided that if such day is a Saturday, Sunday, or holiday then not later than 4:30 p.m. on the first working day immediately preceding. A state candidate from the counties of Hawaii, Maui, and Kauai may file the declaration of candidacy with the respective clerk. The clerk shall transmit to the office of the chief election officer the state candidate's declaration of candidacy without delay.

**3.** HRS § 12-8(a) provides:

**Nomination papers: challenge; evidentiary hearings and decisions.** (a) All nomination papers filed in conformity with section 12-3 shall be deemed valid unless objection is made thereto by a registered voter, chief election officer or county clerk in writing not later than 4:30 p.m. on the thirtieth day or the next earliest working day prior to that election day. An objection in a primary or special election by a registered voter or county clerk shall be filed not later than 4:30 p.m. on the thirtieth day or the next earliest working day prior to that primary or special election day. In case objection is made, notice thereof shall be given including the placement of the notice in the mail by registered or certified mail to the candidate objected thereto.

Hawai'i Constitution, Peabody would be disqualified as a candidate for governor.

On August 16, 1994, the Lieutenant Governor filed a verified complaint in the circuit court for a determination of the objection pursuant to HRS § 12–8(c) (1993).[4] After a hearing, the circuit court sustained the Lieutenant Governor's objection to Peabody's nomination papers, disqualified Peabody as a candidate, and, on August 29, 1994, entered findings of fact, conclusions of law, and a judgment in favor of the Lieutenant Governor. This timely appeal followed.

## II. STANDARDS OF REVIEW

■ A circuit court's findings of fact (FOF) are reviewed under the clearly erroneous standard. *State v. Furutani,* 76 Hawai'i 172, 179, 873 P.2d 51, 58 (1994) (citing *State v. Hutch,* 75 Haw. 307, 328, 861 P.2d 11, 22 (1993)). "An FOF is clearly erroneous when, despite evidence to support the finding, the appellate court is left with the definite and firm conviction that a mistake has been made." *Id.* The circuit court's conclusions of law are reviewed under the right/wrong standard. *Id.* at 180, 873 P.2d at 59 (citing *In re Estate of Holt,* 75 Haw. 224, 234, 857 P.2d 1355 [1359], *reconsideration denied,* 75 Haw. 580, 863 P.2d 989 (1993)).

*State v. Pattioay,* 78 Hawai'i 455, 459, 896 P.2d 911, 915 (1995).

## III. DISCUSSION

A. *Article V, Section 2 of the Hawai'i Constitution Requires That a Partisan Candidate for Governor Must Seek Nomination With a Partisan Candidate for Lieutenant Governor in the Primary Election.*

Peabody argues that the circuit court erred in upholding his disqualification because "Hawaii law does not require that there be a qualified candidate for Lieutenant Governor in order to permit the name of a candidate for Governor to appear on the ballot for a given political party." We disagree.

Article V, section 2 of the Hawai'i Constitution provides:

> There shall be a lieutenant governor who shall have the same qualifications as the governor. The lieutenant governor shall be elected at the same time, for the same term and in the same manner as the governor; provided that the votes cast in the general election for the nominee for governor shall be deemed cast for the nominee for lieutenant governor of the same political party. No person shall be elected to the office of lieutenant governor for more than two consecutive full terms. The lieutenant governor shall perform such duties as may be provided by law.

The language of article V, section 2 sets out three express requirements: (1) a lieutenant governor is required in State government; (2) the lieutenant governor is to be elected at the same time and in the same manner as the governor; and (3) the governor and the lieutenant governor must be elected together, as a pair, in that a vote cast for governor in the general election will constitute a vote cast for the lieutenant governor.

■ Inherent in the scheme set out by the first three express requirements of article V, section 2, however, is a necessary implicit fourth requirement that the candidates for governor and lieutenant governor who form the pairs that are elected together also must be of the same political party.

■ "We have long recognized that the Hawai'i Constitution must be construed with due regard to the intent of the framers and the people adopting it, and the fundamental principle in interpreting a constitutional provision is to give effect to that intent." *Convention Center Auth. v. Anzai,* 78 Hawai'i 157, 167, 890 P.2d 1197, 1207 (1995) (cita-

---

4.  HRS § 12–8(c) provides:
    If the chief election officer or clerk in the case of county offices determines that the objection may warrant the disqualification of the candidate, the chief election officer or clerk shall file a complaint in the circuit court for a
    
    determination of the objection; provided that such complaint shall be filed with the clerk of the circuit court not later than 4:30 p.m. on the seventh working day after the objection was filed.

tions, brackets, and internal quotation marks omitted). As the circuit court noted, the legislative history of the bill that proposed the amendment of article V, section 2 indicates that the amendments were crafted to require that partisan candidates for governor must run in pairs and that each pair seeking election must be comprised of individuals from the same political party. The relevant legislative history provides in pertinent part that:

> The purpose of this bill is to provide for the election of the governor and the lieutenant governor of the same political party by a single vote. *This is to preclude the difficulties which might arise from the election of a governor and a lieutenant governor from opposite political parties.* At the present time, our constitution provides that the lieutenant governor shall be elected in the same manner as the governor. This language of the constitutional provision is ambiguous and does not indicate whether a single ballot can be used in electing both the governor and the lieutenant governor.

Sen.Stand.Comm.Rep. No. 146, in 1963 Senate Journal, at 722–23 (emphasis added).[5] *See also* Hse.Stand.Comm.Rep. No. 184, in 1963 House Journal, at 636. The legislature therefore submitted proposed amendments to article V, section 2 to the electorate, with the specific intent of precluding election of a governor and lieutenant governor from different political parties, and the means by which it sought to achieve this goal was to provide for the election of both offices by the casting of one vote. This goal cannot be met if a partisan candidate for governor who lacks a running mate for lieutenant governor

from the same political party is allowed to be placed on the ballot.

B. *The Succession Order Prescribed in HRS § 26–2(a) (1993) Is Irrelevant to an Interpretation of Article V, Section 2 of the Hawai‘i Constitution.*

HRS § 26–2(a) (1993) provides:

> **Order of succession to offices of governor and lieutenant governor.** (a) When the office of lieutenant governor is vacant by reasons of the lieutenant governor's becoming governor, or the lieutenant governor's failure to qualify, or the lieutenant governor's removal from office, death, resignation, or otherwise, the powers and duties of the office of lieutenant governor shall devolve upon the president of the senate; or, if there is none or upon the president's failure to resign promptly from all legislative offices held by the president, then upon the speaker of the house of representatives; or if there is none or upon the speaker's failure to resign promptly from all legislative offices held by the speaker, then upon the attorney general, the director of finance, the comptroller, the director of taxation, and the director of personnel services in the order named; provided that any officer upon whom the powers and duties of the office of lieutenant governor devolve may decline the powers and duties without the officer's resignation from the office by virtue of the holding of which the officer qualifies to act as lieutenant governor, in which event the powers and duties will devolve upon the next officer listed in the order of succession.

---

5. The actual amendment to the Hawai‘i Constitution was not made until 1964. The relevant legislative history explains:

> The purpose of this bill is to amend Section 2, Article IV, of the State Constitution so that each elector in the general election casts but one vote for Governor and Lieutenant Governor, who are nominated in the primary election by the same party, rather than voting for each candidate separately.
> This bill, in its identical form, was passed by the Second State Legislature in the General Session of 1963 by a vote of less than a two-thirds majority of each house. Accordingly, this bill must be passed by at least a majority

vote of both houses during the current Budget Session of the Second State Legislature in order that the issue may be placed on the ballot in the 1964 election.

Stand.Comm.Rep. No. 98, in 1964 Senate Journal, at 406. *See also* Hse.Stand.Comm.Rep. No. 41, in 1964 House Journal, at 291. The bill was passed by a two-thirds majority, placed on the ballot, and the constitution was thereby amended to its current form.

The provisions of the current article V, section 2 of the Hawai‘i Constitution were previously located in article IV, section 2. Article IV, section 2 was renumbered from Article IV to Article V in the 1978 Constitutional Convention.

Peabody argues that "it cannot be concluded ... that Hawaii law requires that the Governor and the Lieutenant Governor be of the same political party" because the succession order prescribed in HRS § 26–2(a) "pays no attention to any such requirement." We disagree for two reasons.

■ First, and most importantly, as previously discussed, article V, section 2 specifically requires that the elected governor and the lieutenant governor be "of the same political party," and the legislature's prime motivation in proposing the amendments to article V, section 2 was to avoid the election of a governor and a lieutenant governor from different political parties.

Second, as the Lieutenant Governor correctly notes, the succession order prescribed in HRS § 26–2 applies only after an individual has been duly elected to occupy the offices included in the succession order. HRS § 26–2, therefore, provides an order of succession that applies only after the respective officers have properly been elected to public office; it does not relieve the prospective candidate from compliance with article V, section 2 of the Hawai'i Constitution during the qualification and nomination process. Thus, although Peabody is correct that HRS § 26–2(a)'s succession order does not adhere to party lines, HRS § 26–2(a) is irrelevant to an interpretation of article V, section 2.

C. *The Publication of Article V, Section 2 of the Hawai'i Constitution and Attorney General Opinion No. 78–3 Constitutes Notice of the Requirement that Partisan Candidates for Governor Must be Accompanied by a Candidate for Lieutenant Governor from the Same Political Party.*

Finally, Peabody appears to argue that, because none of the material distributed by the Lieutenant Governor's office prior to the filing deadline informed Peabody of the requirement that a partisan candidate for governor must be accompanied by a duly nominated candidate for lieutenant governor from

the same party, he was denied due process. We disagree for two principal reasons.

■ First, as previously discussed, the requirement that a partisan candidate for governor must run with a candidate for lieutenant governor from the same party stems directly from the language of the Hawai'i Constitution itself. As we noted in an analogous situation, a law takes effect upon its passage, and mere ignorance of the law constitutes no defense to its enforcement. *Nachtwey v. Doi,* 59 Haw. 430, 447–48, 583 P.2d 955, 966 (1978). The requirements of article V, section 2 therefore applied to all persons seeking candidacy after the passage of its amendments in 1978, including Peabody.

Second, in 1978, the state attorney general issued an opinion to then-lieutenant governor Doi indicating that, based on article V, section 2, the Libertarian Party, *inter alia,* could *not* run a candidate for governor without also running an accompanying candidate for lieutenant governor. Op. Att'y Gen. No. 78–3 (July 20, 1978). Peabody asserts that the mere mention of the Libertarian Party in the opinion cannot impute knowledge of the opinion on the party and its members. Although Peabody may be correct, it is the publication of the attorney general's opinion, in addition to the publication of article V, section 2, and not the attorney general's opinion's reference to the Libertarian Party, that provides Peabody with notice.[6] Therefore, we hold that Peabody had sufficient notice of the constitutional requirement—that a partisan nominee for governor must be accompanied by a nominee for lieutenant governor from the same party in order to qualify for candidacy—to satisfy the constitutional mandate of due process.

## IV. *CONCLUSION*

For the foregoing reasons, the judgment of the circuit court is affirmed.

---

6. Moreover, a review of the official text of the Hawai'i Constitution in both the 1985 and 1993 versions of the HRS indicates that the annotations to article V, section 2 include a reference to the attorney general's opinion No. 78–3. *See* Haw. Const. art. V, § 2 (1985 and 1993) ("Political parties must run candidates for both the office of the governor and office of lieutenant governor. Att. Gen. Op. 78–3").