950 P.2d 695

Queen BRITT, Plaintiff–Appellee,

and

Bernadina Collins, Plaintiff

v.

UNITED STATES AUTOMOBILE ASSOCIATION, Defendant–Appellant

No. 20504.

Supreme Court of Hawai'i.

Jan. 9, 1998.

Michael F. O'Connor and Lissa H. Andrews of Tam, O'Connor & Henderson, on the briefs, Honolulu, for defendant-appellant.

Henry R. Lobdell, Robert D. Kawamura, Stacy Moniz, and Kekuailohia M. Beamer of Kawamura, Lobdell & Moniz, Honolulu, on the brief, for plaintiff-appellee.

Before MOON, C.J., and KLEIN, LEVINSON, NAKAYAMA and RAMIL, JJ.

MOON, Chief Justice.

Following a First Circuit bench trial, defendant-appellant United Services Automobile Association (USAA) appeals from the trial court's final judgment in favor of plaintiff-appellee Queen Britt, wherein the trial court held that USAA's insurance renewal form, with respect to the selection of "stacked" versus "nonstacked" uninsured/underinsured motorist coverage (UM/UIM), was ambiguous and, therefore, construed coverage as "stacked," in favor of Britt. On appeal, USAA contends that the trial court erred in holding that its insurance renewal form packet was ambiguous and that, therefore, Britt should not have been permitted to recover under the policy as a "stacked" insured.

For the reasons set forth below, we affirm the final judgment of the trial.

## I. *BACKGROUND*

Prior to May 1993, Britt, who owned two motor vehicles, had an automobile insurance policy with USAA for minimum bodily injury coverage of $35,000 on each vehicle and had her uninsured motorist (UM) and underinsured motorist (UIM) coverage "stacked." Stacked, as opposed to nonstacked UM/UIM coverage means that, in the event that one is involved in an accident with a motorist who is uninsured or underinsured, the injured party may make a claim against his or her own insurance policy for the aggregate sum of the limits under his or her UM or UIM coverage. Hence, in the instant case, nonstacked coverage would be $35,000 and stacked coverage for two vehicles would be $70,000, that is, two vehicles at $35,000 each.

It is undisputed that, prior to 1993, insureds who owned more than one vehicle could automatically make claims as stacked insureds. However, due to legislative amendments, Hawaii Revised Statutes (HRS) § 431:10C–301 (1993), effective January 1, 1993, mandated that insurance companies could no longer automatically stack UM/UIM coverage for their insureds, but were required to offer the insured the option to: (1) purchase stacked insurance; and (2) select UM and UIM coverage up to, but not greater than the bodily injury liability coverage limits in the insured's policy. Additionally, the statute was amended to provide that minimum coverage was reduced from $35,000 to $25,000. HRS § 431:10C–301 provides in relevant part:

**Required motor vehicle policy coverage.**

(b) A motor vehicle insurance policy shall include:

(1) Liability coverage of not less than $25,-000 for all damages arising out of accidental harm sustained by any one person as a result of any one accident applicable to each person sustaining accidental harm arising out of ownership, maintenance, use, loading, or unloading of the insured vehicle[.]

. . . .

(c) The stacking or aggregating of uninsured motorist coverage or underinsured motorist coverage is prohibited, except as provided in subsection (d).

(d) An insurer shall offer the insured the opportunity to purchase uninsured motorist coverage and underinsured motorist coverage by offering the following options with each no-fault policy:

(1) The option to stack uninsured motorist coverage and underinsured motorist coverage; and

(2) The option to select uninsured motorist coverage and underinsured motorist coverage, whichever is applicable, up to but not greater than the bodily injury liability coverage limits in the insured's policy.

These offers are to be made when a no-fault policy is first applied for or issued. For any existing policies, an insurer shall offer such coverage at the first renewal after January 1, 1993. Once an insured has been provided the opportunity to purchase the coverages under the options, no further offer is required to be included with any renewal or replacement policy issued to the insured.

On or about May 3, 1993, Britt received a 19–page automobile policy renewal packet from USAA. On page 2 of the packet, under the heading "IMPORTANT CHANGES IN YOUR HAWAII AUTO POLICY," USAA made the following disclosures relevant to the instant case:

1. MINIMUM LIMITS

The new minimum limit for Bodily Injury Liability (BI), Uninsured Motorists (UM) and Underinsured Motorists (UIM) Coverages is $25,000.

. . . .

3. UNINSURED MOTORISTS (UM) AND UNDERINSURED MOTORISTS (UIM) COVERAGES (Reduction Of Coverage)

Hawaii law requires that we issue both UM and UIM coverages to your BI limits. It also requires that we reduce your coverage from "stacked" to "nonstacked". The principal difference between these two forms of coverage is in

the total amount of protection. Under your current nonstacked coverage, the total amount of protection for any one accident is the limit stated on your Policy Declarations page for UM or UIM, no matter how many vehicles you own or insure. For example, if the UM or UIM limit on your policy is $35,000 for each of three vehicles, the most coverage you would have for each injured covered person for any one accident would be $35,000.

With the stacked coverage option, the total amount of protection from any one accident is the sum of the limits of UM or UIM applicable to each vehicle insured as shown on the Policy Declarations page. For example, if the UM or UIM limit on your policy is $35,000 for each of three vehicles, the most coverage you would have for each injured covered person for any one accident would be $105,000.

The law also requires that we offer you some options. You may select limits greater than your BI limits, request the stacked form of coverage, or reject UM and/or UIM coverages entirely.

See forms 41H1 and 999 for more information.

On page 3 of the renewal packet, the bodily injury limits of Britt's policy were listed as $35,000 coverage. Page 15 of the packet was entitled "BNF [Basic No–Fault]/ANF [Additional No–Fault] ORDER FORM." At the very top of the form, it stated: "To order or reject coverage, please complete and sign this form. If a current policy is in effect, and no changes are desired, no action is required." The remainder of the form included several coverage option amounts, including the previous minimum of $35,000 and the new minimum of $25,000. Beneath each choice was a box where the insured could select the coverage he or she wished, as well as the corresponding premium and deductible. Wishing to retain the same coverage as that under her current policy, that is, $35,000, Britt took "no action."

Page 16 of the renewal packet was entitled "UM/UIM ORDER/REJECTION FORM". Again, at the very top of the form, USAA

provided the following instruction: "To order or reject coverage, please complete and sign this form. If a current policy is in effect, and no changes are desired, no action is required." The top half of the form contained information on stacked and nonstacked limits, along with the corresponding premiums. The bottom half of page 16 was entitled "REJECTION" and contained six sentences adjacent to six boxes wherein the insured could make a check mark to reject the following:

[1] I reject the Uninsured Motorists coverage for this policy and all subsequent renewals entirely.

[2] I reject the Underinsured Motorists coverage for this policy and all subsequent renewals entirely.

[3] I reject the Nonstacked Uninsured Motorists coverage for this policy and all subsequent renewals and select the Stacked Uninsured Motorist coverage.

[4] I reject Nonstacked Underinsured Motorists Coverage for this policy and all subsequent renewals and select Stacked Underinsured Motorists coverage.

[5] I reject the Stacked Uninsured Motorists coverage for this policy and all subsequent renewals and select the Non stacked.

[6] I reject Stacked Underinsured Motorists Coverage for this policy and all subsequent renewals and select Nonstacked.

**Valid rejection must be signed below.**

(Bold emphasis in original.) Not wishing to reject any coverage, and in accordance with the instruction that "no action [was] required" if a current policy was in effect and no changes were desired, Britt did not fill out the form on page 16.

On October 6, 1993, Britt was involved in an automobile accident with an uninsured motorist. On March 31, 1995, she filed a declaratory action to have the circuit court declare that her policy limits were $70,000 pursuant to the stacked coverage of her UM limits of $35,000 on each of her two automobiles. On August 29, 1996, USAA moved for

summary judgment, arguing that Britt had only nonstacked coverage. On November 12, 1996, the circuit court denied the motion, ruling that there were material issues of fact with respect to ambiguities in the renewal policy that had to be submitted to the trier-of-fact.

On January 2, 1997, the case proceed to a jury-waived trial. At trial, Britt testified that, when she received the renewal packet, she looked through it briefly but focused her attention on pages 3 and 16. Her interest in page 3 was to ascertain that her bodily injury coverage was maintained at the rate in her current policy, that is, $35,000. The form so indicated. She then looked at page 16 and concluded that, because she did not wish to reject any coverage in her current policy, in accordance with the instruction at the top of the page, she took "no action" and did not select any of the six options beginning with "I reject."

Britt further testified that, although she was not completely conversant with the terms "stacked" versus "nonstacked," she understood her policy as providing a total of $70,000 in UM coverage.

Q: [By plaintiff's counsel] [P]rior to May of 1993, were you familiar with the terms of "stacked insurance coverage" as compared to "nonstacked insurance coverage"?

A: [By Britt] I'm not exactly sure what—what they are.

Q: Well, let me ask you then, what is your understanding of, prior to May 1993, for example, what type of uninsured motorist coverage did you have?

A: Well, I had full coverage for each one of my cars. They were—it was $35,000 on each one of the cars, about $70,000 worth of insurance.

Q: When you say there was $35,000, there was $35,000 coverage on each car?

A: Yes. Each car was $35,000, but the whole thing was $70,000 worth of insurance.

Hence, under her current policy, Britt understood that she had $35,000 coverage per car and that she was able to combine coverages for each car such that "the whole thing was $70,000 worth of insurance." She

wished to maintain her policy exactly as it had been prior to May 1993, explaining: "I want to keep everything that I have from day one and from square one. And I don't want to reject anything. I don't want to—I didn't want to send [the renewal forms] back. I want all of what I've got."

On January 3, 1997, based upon its review of the renewal packet and the evidence adduced at trial, the circuit court orally ruled in Britt's favor. In its oral ruling, the court, having found the renewal packet to be ambiguous, consulted the legislative history and read the following into the record:

And I'm looking at the legislative history which is found in Conference Committee Report 150 on House Bill 3974 from the 199[2] House Journal.

It says with respect to the amendment, that became the aforesaid sections of the statute, quote[:]

'Providing that insurers shall offer optional uninsured, UM, and under insured, UIM, coverage at least equal to an insurance maximum bodily injury liability coverage and option stacking, period.

Since the bill also contains prohibition against the stacking of UM and UIM benefits, these provisions will allow consumers to obtain sufficient UM and UIM insurance coverages, period.

This tradeoff between the elimination of stacking, and these optional coverages will be equitable only if consumers are fully informed of their loss of rights and ability to protect themselves through voluntary additional options at nominal costs.'

On February 19, 1997, the court issued the following relevant findings of fact and conclusions of law:

*FINDINGS OF FACT*

1. On and immediately before March 29, 1993, Plaintiff Queen Britt had two automobiles that were insured by Defendant United Services Automobile Association (USAA) through policy number 00151 71 23U 7108 4 [ (the policy) ]. The policy provided in pertinent part uninsured motorist coverage for each are with a limit of

$35,000, which could be "stacked" for an aggregate uninsured motorist coverage of $70,000. Under the policy then in effect the bodily injury limit of liability also was $35,000 per vehicle.

. . . .

4. The UM/UIM Order/Rejection form [ ] was neither completed nor returned to Defendant by Plaintiff.

5. Upon receipt of [the policy renewal packet] and at all pertinent times thereafter, Plaintiff intended to renew her insurance policy by continuing the terms of the current policy in effect for the renewal period. She sought no changes in the policy.

6. Plaintiff read attentively only pages 3 and 16 of [the renewal packet] upon receipt. Plaintiff read page 3 particularly to note the coverage amounts and proper identification of her two vehicles, without reference to stacking or nonstacking.

7. Plaintiff read and relied upon the following sentence of the UM/UIM Order/Rejection form[ ]: "If a current policy is in effect, and no changes are desired, no action is required."

8. The above quoted sentence is clear, unambiguous and would lead a reasonable person to conclude that the current policy would remain in effect in all respects if page 16 of [the renewal packet] were not completed and returned to the Defendant.

9. The remainder of page 16 of [the renewal packet] is not clear. The section entitled "Rejection" would lead a reasonable person to believe that filling in any of those boxes would result in rejection of some aspect of current policy coverage, as opposed to requiring a person to elect a box that begins with the words "I reject" in order to maintain particular coverage. The only place for signature on page 16 is just below the words "Valid rejection must be signed below." Again, this format would lead a reasonable person to conclude that signing the form and sending it to Defendant would constitute rejection of some aspect of current policy coverage. Likewise, the suggestion that one must order any coverage to maintain the current policy in effect is inconsistent with the instruction that "no action is required" to maintain the current policy in effect.

10. Plaintiff credibly testified that she noted each option that began with the words "I reject" is found under the section of form entitled "Rejection" on page 16 of [the renewal packet] and, consistent with her intention to renew rather than reject the terms of the current policy, she did not pursue them.

11. The reason Plaintiff did not complete nor return page 16 of [the renewal packet] was because Plaintiff did not want to change her current policy, which included stacked uninsured motorist coverage.

12. Defendant USAA did renew Plaintiff's policy at the same $35,000 coverage limits for bodily injury and uninsured motorist, even though the minimum coverage required by law had been reduced to $25,000, as set forth in page 2 of [the renewal packet], and even though Plaintiff did not fill in and return page 16 of [the renewal packet], electing the $35,000 coverage, which was above the minimum coverage required by law.

13. The minimum bodily injury coverage required by law under the policy in effect for Plaintiff when she received the renewal packet [ ] had been $35,000; uninsured motorist coverage was required by law to be "stacked" under the policy in effect at that time.

. . . .

17. [The renewal packet] by which Plaintiff received notice of optional coverage and the method by which to accept the offer in this case was misleading, ambiguous and confusing.

*CONCLUSIONS OF LAW*

1. [The renewal packet] with respect to Defendant USAA's offer regarding stacking/nonstacking of uninsured motorist coverage was not legally sufficient. *Mollena v. Fireman's Fund Insurance Company of Hawaii, Inc.,* 72 Haw. 314, 816 P.2d 968 (1991).

2. The requirements of *Mollena, supra,* are applicable to uninsured motorist policy coverage options required to be offered by HRS Section 431:10C–301(c)–(d).

3. Insurance policies, because they are contracts of adhesion, must be construed liberally in favor of coverage, and therefore coverage exists unless exclusions clearly provide otherwise.

4. Pursuant to the analysis in *Mollena*, the Defendant must intelligibly inform the Plaintiff of changes in her policy, including the nature of stacked coverage, and provide an intelligible, commercially reasonable offer to her. Defendant USAA failed to do so regarding the stacking option contained in [the renewal packet], page 16.

5. The viewpoint of a layperson is applicable in evaluating the commercial reasonableness of an offer regarding the stacking option.

. . . .

7. Based upon the above, the Court concludes that Plaintiff Britt is entitled to the benefits of stacking of the uninsured motorist (UM) coverage, establishing an aggregate UM policy limit of $70,000[.]

USAA's timely appeal followed.

## II. *STANDARDS OF REVIEW*

We review the circuit court's findings of fact (FOF) under the clearly erroneous standard. *Hirono v. Peabody*, 81 Hawai'i 230, 232, 915 P.2d 704, 706 (1996) (citation omitted). A FOF is clearly erroneous when, "despite evidence to support the finding, the appellate court is left with the definite and firm conviction that a mistake has been made." *Id.*

A conclusion of law is not binding upon the appellate court and is freely reviewable under the right/wrong standard. *Id.*

## III. *DISCUSSION*

On appeal, USAA contends that the renewal packet was unambiguous and legally sufficient. Conversely, Britt argues that USAA's automobile renewal packet was ambiguous and failed to intelligibly advise her of the nature of her coverage.

In *Mollena v. Fireman's Fund Insurance Company of Hawaii Inc.*, 72 Haw. 314, 816 P.2d 968 (1991), this court held that, where a statute mandates that " '[e]ach insurer *shall*

*offer* to each policy holder' optional underinsured motorist coverage[,]" we will interpret this language to mean that the insurer must make a legally sufficient offer under the following four-part test:

(1) if made other than face-to-face, the notification process must be commercially reasonable; (2) the limits of optional coverage must be specified and not merely offered in general terms; (3) the insurer must intelligibly advise the insured of the nature of the optional coverage; and (4) the insurer must apprise the insured that the optional coverage is available for a relatively modest increase in premium.

*Id.* at 320, 816 P.2d at 971 (citations omitted).

■ The insurer has the burden of proving that it made a legally sufficient offer under the four-part test. *Id.* "If the insurer cannot show that the four-part test has been met, then coverage is implied as a matter of law." *Id.*

■ Furthermore, because insurance polices are contracts of adhesion, they must be construed liberally in favor of coverage. *Estate of John Doe v. Paul Revere Ins. Group*, 86 Hawai'i 262, 274, 948 P.2d 1103, 1115 (1997) (citations omitted); *Hurtig v. Terminix Wood Treating & Contracting Co.*, 67 Haw. 480, 481, 692 P.2d 1153, 1153 (1984). Ambiguity must therefore be resolved against the insurer. *Estate of John Doe*, 86 Hawai'i at 274, 948 P.2d at 1115 (citations omitted); *State Farm Mut. Auto. Ins. Co. v. Cage*, 874 F.Supp. 272, 273 (D.Haw.1994). Specifically at issue in the instant case is whether USAA satisfied the third prong of the test, that is, whether USAA intelligibly advised Britt of the nature of her coverage.

■ On appeal, USAA contends that the offer was legally sufficient because, when read as a whole, USAA's disclosures regarding changes made it clear to Britt that action was required in order for her to "reject the Nonstacked Uninsured Motorists coverage" and to "reject Nonstacked Underinsured Motorists coverage." We disagree.

The method of acceptance in USAA's renewal packet was ambiguous because it leads a reasonable person to believe that, "if a

current policy is in effect, and no changes are desired, no action is required." Britt: (1) had a current policy in effect with (a) $35,000 bodily injury coverage and (b) "stacked" UM/UIM coverage; and (2) desired no changes. Therefore, it was reasonable for her to conclude that her coverage would be maintained if she took "no action."

Furthermore, the resulting coverage asserted by USAA in this instance belies USAA's claim of clarity. With respect to maintaining Britt's minimum bodily injury limits at $35,000, Britt notes that the policy disclosed that the minimum had been reduced to $25,000. However, by taking "no action," her higher coverage and commensurately higher premium remained the same, but, with respect to maintaining her stacked "UM/UIM" coverage, taking no action caused it to be "nonstacked."

 Additionally, the double negative language used on page 16 is confusing. Where USAA meant to provide an option for consumers to "select stacked" UM/UIM insurance, it worded it as, "I reject nonstacked" UM/UIM insurance. Britt testified that she did not wish to reject any coverage in her current policy. Rather she wished to "keep everything that I have from day one and from square one. And I don't want to reject anything. I don't want to—I didn't want to send [the renewal forms] back. I want all of what I've got."

The renewal packet sent to Britt can hardly be said to have "fully informed [Britt of her] loss of rights and ability to protect [herself]." Hse. Conf. Comm. Rep. No. 150, in 1992 House Journal, at 878. We therefore hold that the trial court's conclusion that USAA's renewal packet was ambiguous and failed to intelligibly advise Britt of the nature of her coverage was right. Pursuant to *Estate of John Doe* and *Hurtig*, USAA's ambiguous renewal packet must be construed in favor of the insured. As such, USAA failed to meet its burden of intelligibly informing Britt of the nature of her coverage, and, therefore, "coverage is implied as a matter of law." *Mollena*, 72 Haw. at 320, 816 P.2d at 971.

## IV. CONCLUSION

Accordingly, we affirm the final judgment of the trial court.