967 P.2d 228

**STATE of Hawai'i, Plaintiff–Appellant,**

v.

**Henry K. KAPIKO, Defendant–Appellee.**

**No. 21004.**

Supreme Court of Hawai'i.

Sept. 30, 1998.

---

Bryan K. Sano, Deputy Prosecuting Attorney, on the briefs, Honolulu, for plaintiff-appellant.

Keith S. Shigetomi for defendant-appellee, Honolulu, no answering brief filed.

Before MOON, C.J., and KLEIN, LEVINSON, NAKAYAMA and RAMIL, JJ.

NAKAYAMA, Justice.

This opinion addresses the issue of under what circumstances, in cases where a confidential informant (CI)[1] provides information used by the police in an affidavit to support a finding of probable cause to issue a search warrant, the prosecution must reveal to the

1. All references to the CI will use the gender term "he" for convenience.

defendant information in the affidavit that would lead to the identification of the CI.

In this case, the prosecution appeals from the circuit court's findings of fact, conclusions of law, and order, filed September 15, 1997, granting an oral motion to dismiss the complaint with prejudice. The order dismissed all charges against defendant-appellant Henry K. Kapiko after the prosecution refused to release to Kapiko an unredacted copy of the affidavit supporting the search warrant after it had been ordered to do so by the circuit court. The prosecution had redacted the dates of the CI's observations from the affidavit because it believed that revealing the dates would thereby lead to the identification of the CI.

The prosecution raises the following as points of error: (1) the circuit court erred when it ruled that information in the affidavit that would lead to the identification of the CI was not privileged pursuant to Hawai'i Rules of Evidence (HRE) Rule 510; [2] and (2) the circuit court erred when it ruled that information in the affidavits that would lead to the identification of the CI was not privileged pursuant to Hawai'i Rules of Penal Procedure (HRPP) Rule 16(e)(5)(ii). [3]

We vacate the circuit court's order and hold: (1) information in the affidavit that would lead to the identification of the CI was privileged pursuant to HRE Rule 510; and (2) information in the affidavit that would lead to the identification of the CI was privileged pursuant to HRPP Rule 16(e)(5)(ii). Because revealing the dates of the CI's observations would lead to the identification of the CI, the prosecution was not required to reveal the exact dates, and the circuit court erred when it granted Kapiko's motion to dismiss the complaint. Instead, to address Kapiko's concerns as to the staleness of the affidavit, the circuit court should have ordered the prosecution to release a range of dates within which the CI's observations took place.

## I. BACKGROUND

On January 3, 1997, the police obtained a search warrant authorizing a search of Kapiko's home. The district court found probable cause to issue the warrant based on an affidavit of Honolulu Police Department Officer Peter Nakagawa (the Nakagawa affidavit), which was based on information supplied to him by a CI. The CI provided Officer Nakagawa with a physical description of Kapiko and Kapiko's address and told Officer Nakagawa that: (1) he had seen a shotgun and crystal methamphetamine in Kapiko's house; and (2) he had seen Kapiko and guests in Kapiko's house use crystal methamphetamine on several occasions. Officer Nakagawa averred that: (1) Kapiko had thirty-four prior arrests, many of which were for narcotics or narcotics-related offenses; (2) Kapiko had been previously convicted of promoting a dangerous drug in the third degree, prohibited acts related to drug paraphernalia, kidnapping, and terroristic threatening in the first degree; and (3) Kapiko was on parole and supervised by the Hawai'i Paroling Authority.

On January 7, 1997, the police executed the search warrant, at which time Kapiko was arrested. Based on contraband recovered during the search, Kapiko was charged with promoting a dangerous drug in the third degree, in violation of HRS § 712–1243(1) (Supp.1997), [4] and unlawful possession of drug paraphernalia, in violation of HRS § 329–43.5(a) (1993). [5]

---

2. For the text of HRE Rule 510, *see infra* part III.A.

3. For the text of HRPP Rule 16(e)(5)(ii), *see infra* part III.B.

4. HRS § 712–1243(1) provides: "A person commits the offense of promoting a dangerous drug in the third degree if the person knowingly possesses any dangerous drug in any amount."

5. HRS § 329–43.5(a) provides:
It is unlawful for any person to use, or to possess with intent to use, drug paraphernalia to plant, propagate, cultivate, grow, harvest, manufacture, compound, convert, produce, process, prepare, test, analyze, pack, repack, store, contain, conceal, inject, ingest, inhale, or otherwise introduce into the human body a controlled substance in violation of this chapter. Any person who violates this section is guilty of a class C felony and upon conviction may be imprisoned pursuant to [HRS § ] 706–660 and, if appropriate as provided in [HRS § ] 706–641, fined pursuant to [HRS § ] 706–640.

On February 18, 1997, Kapiko filed a motion to compel discovery, pursuant to HRPP Rule 16, seeking: (1) the Nakagawa affidavit; (2) the name and address of any CI used during the investigation of Kapiko's case; (3) a copy of the agreement between the police and any CI used in Kapiko's case; (4) the criminal arrest and conviction record of any CI used in Kapiko's case; and (5) copies of all police reports or discovery materials in relation to cases in which the CI had assisted the police previously (motion to compel discovery). Kapiko alleged that he needed the information for the following reasons: (1) to file the appropriate pre-trial motions and prepare for trial; and (2) to provide Kapiko with due process and the effective assistance of counsel as guaranteed under the United States and Hawai'i Constitutions.

At the hearing on the motion to compel discovery, on March 3, 1997, the prosecution stated that the CI was not going to be called as a witness in Kapiko's case and invoked its privilege to refuse to disclose the identity of the CI pursuant to HRE Rule 510. The circuit court ruled that the prosecution must turn over the Nakagawa affidavit, redacted to exclude the name and address of the CI, but denied Kapiko's other discovery requests. The prosecution noted that, because the Nakagawa affidavit did not contain the name and address of the CI, the circuit court was ordering it to turn over an unredacted copy of the Nakagawa affidavit.

The prosecution turned over a copy of the Nakagawa affidavit, but redacted the dates of the observations of the CI, because it believed that, by revealing the dates of the observations, the identity of the CI would thereby be revealed. In response, Kapiko filed a motion to suppress on March 17, 1997, arguing that, because Kapiko could not determine the dates of the CI's observations, he could not determine whether the information provided in the Nakagawa affidavit was stale and could not otherwise refute the factual allegations of the Nakagawa affidavit.

At the hearing on the motion to suppress on July 9, 1997, the prosecution argued that revealing the exact dates in the affidavit would be tantamount to revealing the identity of the CI. The prosecution also offered to have Officer Nakagawa testify regarding the timeliness of the information without revealing the exact dates of the CI's observations. The circuit court continued the motion to August 27, 1997, and ordered the prosecution to provide Kapiko with an unredacted copy of the Nakagawa affidavit.

In the interim, the prosecution filed a motion to reconsider the order granting Kapiko's motion to compel discovery. The hearing for this motion was held on August 1, 1997. Before the hearing, the prosecution submitted an unredacted copy of the Nakagawa affidavit to the circuit court for an in camera inspection. The circuit court denied the prosecution's motion to reconsider, stating the following in its findings of fact and conclusions of law:

### FINDINGS OF FACT

. . .

7. The Court reviewed the search warrant and an unredacted copy of Nakagawa's affidavit. . . .

9. Nakagawa's affidavit in support of the search warrant stated that he had reason to believe that the property described could be found at the location for the following reasons, among others:

a. Nakagawa had received a complaint of possible narcotics activity by [Kapiko] occurring at 2229 Tantalus Drive on December 18, 1996;

b. Nakagawa conferred with a confidential informant who was not named or otherwise identified in Nakagawa's affidavit;

c. The informant told Nakagawa that on a date specified in Nakagawa's affidavit, the informant saw a shotgun while at 2229 Tantalus Drive;

d. The informant described how he saw the shotgun in relationship to [Kapiko's] person, certain conduct of [Kapiko] in handling the shotgun and statements made by Kapiko regarding the shotgun;

e. The informant related that on a date specified in the affidavit he observed [Kapiko] in possession of a glass smoking pipe containing crystal methamphetamine, two

packets of drugs in [Kapiko's] bedroom and similar packets on the kitchen table;

 f. The informant related that on a date prior to the date specified in the affidavit he observed [Kapiko] ingest crystal methamphetamine;

10. The State of Hawai['']i seeks to preclude [Kapiko] from discovering when and under what circumstances specified in the affidavit that [Kapiko] was observed by the confidential informant with the shotgun and narcotics.

11. The information sought to be withheld establishes the basis for the finding of probable cause to believe that the items to be seized are located at the place to be searched, on the date and time approved by the District Court.

12. The State of Hawai['']i seeks to withhold the information on the basis that the disclosure would lead to the discovery of the identity of the informant and will jeopardize his physical safety.

13. The[re] has been no evidence presented regarding the physical safety of the informant;

14. [Kapiko] asserts that the affidavit he received, as redacted, fails to establish probable cause for the issuance of the search warrant;

15. [Kapiko] asserts that he is unable to challenge the validity of the search warrant because without the specific information in the affidavit, he is unable to determine whether or not the information provided to the District Court was stale or otherwise refute the informant's allegations;

16. The information sought is material to the preparation of [Kapiko's] defense[.]

## CONCLUSIONS OF LAW

. . .

2. Rule 16 of Hawai['']i Rules of Penal Procedure (HRPP) provides that [Kapiko] is entitled to any papers and documents which are material to the preparation of his defense;

3. Rule 16, HRPP[,] provides that the disclosure of the identity of the informant is not required where it's a secret and

failure to disclose will not infringe on the constitutional right of [Kapiko];

4. [Kapiko] has a Fourth Amendment right to be free from unreasonable searches and seizures, and as such, a right to challenge the validity of the search warrant;

5. In challenging the validity of the search warrant, [Kapiko] is entitled to challenge whether there is sufficient information to establish probable cause and where probable cause is based on hearsay obtained from a police informant, whether the affidavit discloses some of the underlying circumstances from which the informant drew the conclusion of criminal activity and some of the reasons which led the officer to believe that the informant was credible and the information reliable;

6. [Kapiko's] Sixth Amendment right and Fourth Amendment right would be infringed by the nondisclosure of the sought after information;

7. Under *State v. Bullen*, 63 Haw. 27, 620 P.2d 728 (1980), where disclosure of an informant's identity is relevant and helpful to the defense of an accused or is essential to the fair determination of a cause, the government's privilege to withhold from disclosure the identity of persons reporting law violations to the police must give way to the due process requirements of a fair trial;

8. Disclosure of [the Nakagawa affidavit] is relevant and helpful [to] [Kapiko] and is essential to a fair determination of the cause[.]

The circuit court ordered the prosecution to provide Kapiko with an unredacted copy of the Nakagawa affidavit.

In response to the ruling, the prosecution informed the circuit court that it would not turn over an unredacted copy of the Nakagawa affidavit because it would place the CI in grave danger. The circuit court continued the case to August 7, 1997, in order to allow the prosecution to decide if it was going to *nolle prosequi* the case in order to protect the identity of the CI.

On August 7, 1997, the prosecution again invoked its privilege to not disclose the iden-

tity of the CI, pursuant to HRE Rule 510. The prosecution also offered a more detailed affidavit from Officer Nakagawa, and argued that the circuit court could again re-examine the initial Nakagawa affidavit in camera to determine whether the facts in the Nakagawa affidavit were stale. The circuit court responded as follows:

> The Court: [Mr. Prosecutor], I hate to go over this because this is the third hearing that we've gone through. But only one of the issues was staleness. Essentially, [Defense Counsel] wants to challenge the validity of the warrant. But he is not given the information that establishes the basis for the warrant being granted....

The circuit court then ordered the prosecution to turn over an unredacted copy of the Nakagawa affidavit. The prosecution refused. Defense counsel then orally moved to dismiss the case with prejudice. The circuit court orally granted the motion and later filed a findings of fact, conclusions of law, and order granting oral motion to dismiss complaint with prejudice on September 15, 1997. The findings of fact and conclusions of law were similar to those issued with the order denying the prosecution's motion to reconsider.

The prosecution's timely appeal followed.

## II. STANDARD OF REVIEW

■ "[F]indings of fact are reviewed to see if they are clearly erroneous[.]" *Furukawa v. Honolulu Zoological Society*, 85 Hawai'i 7, 12, 936 P.2d 643, 648, *reconsideration denied*, 85 Hawai'i 196, 940 P.2d 403 (1997) (citing *Hirono v. Peabody*, 81 Hawai'i 230, 232, 915 P.2d 704, 706 (1996)). "A finding of fact is clearly erroneous when, despite evidence to support the finding, the appellate court is left with the definite and firm conviction in reviewing the entire evidence that a mistake has been committed." *Aickin v. Ocean View Invs. Co., Inc.*, 84 Hawai'i 447, 453, 935 P.2d 992, 998 (1997) (quoting *Dan v. State*, 76 Hawai'i 423, 428, 879 P.2d 528, 533 (1994)).

■ "[C]onclusions of law are reviewed under the right/wrong standard." *Furukawa*, 85 Hawai'i at 12, 936 P.2d at 648 (citing

*Peabody*, 81 Hawai'i at 232, 915 P.2d at 706). Under the *de novo* or right/wrong standard, this court "examine[s] the facts and answer the question without being required to give any weight to the trial court's answer to it." *Aickin*, 84 Hawai'i at 453, 935 P.2d at 998 (ellipsis and citations omitted). "[A] conclusion of law is not binding upon the appellate court and is freely reviewable for its correctness." *Tabieros v. Clark Equipment Co.*, 85 Hawai'i 336, 350, 944 P.2d 1279, 1293 (1997) (citations and internal quotation marks omitted).

## III. DISCUSSION

### A. THE IDENTITY OF THE CI WAS PRIVILEGED PURSUANT TO HRE RULE 510.

■ The prosecution argues that it was not required to disclose information that would lead to the identification of the CI to Kapiko because the information was privileged under HRE Rule 510. We agree.

HRE Rule 510 provides in pertinent part:

> (a) Rule of privilege. *The government or a state or subdivision thereof has a privilege to refuse to disclose the identity of a person who has furnished information relating to or assisting in an investigation of a possible violation of law to a law enforcement officer* or member of a legislative committee or its staff conducting an investigation.
>
> ...
>
> (c) *Exceptions*
>
> ...
>
> (2) Testimony on merits. *If it appears from the evidence in the case or from other showing by a party that an informer may be able to give testimony necessary to a fair determination of the issue of guilt or innocence in a criminal case* or of a material issue on the merits in a civil case to which the government is a party, and the government invokes the privilege, the judge shall give the government an opportunity to show in camera facts relevant to determining whether the informer can, in fact, supply that testimony. The showing will ordinarily be in the form

of affidavits, but the judge may direct that testimony be taken if the judge finds that the matter cannot be resolved satisfactorily upon affidavit. If the judge finds that there is a reasonable probability that the informer can give the testimony, and the government elects not to disclose the informer's identity, the judge on motion of the defendant in a criminal case shall dismiss the charges to which the testimony would relate, and the judge may do so on the judge's own motion.

(3) Legality of obtaining evidence. *If information from an informer is relied upon to establish the legality of the means by which evidence was obtained and the judge is not satisfied that the information was received from an informer reasonably believed to be reliable or credible, the judge may require the identity of the informer to be disclosed.* The judge shall, on request of the government, direct that the disclosure be made in camera. All counsel and parties concerned with the issue of legality shall be permitted to be present at every stage of proceedings under this paragraph except a disclosure in camera, at which no counsel or party shall be permitted to be present. If disclosure of the identity of the informer is made in camera, the record thereof shall be sealed and preserved to be made available to the appellate court in the event of an appeal, and the contents shall not otherwise be revealed without consent of the government.

(Emphases added.)

The condition under which the prosecution must disclose the identity of a CI, pursuant to HRE Rule 510(c)(2), pertains only to a situation where it is anticipated that the CI will give "testimony necessary to a fair determination of the guilt or innocence in a criminal case." Here, the testimony of the CI was not necessary for a determination of guilt or innocence. According to the prosecution, the CI was not going to be called to testify at trial because the information provided by the CI was not the basis for any of the offenses charged against Kapiko, the CI did not ac-

tively participate in any of the offenses charged, and the proof of Kapiko's guilt depended on the circumstances at the time the warrant was executed and not on any information supplied by the CI. Therefore, the HRE Rule 510(c)(2) exception, requiring disclosure of the identity of the CI, did not apply to this case and the prosecution had the privilege to refuse to disclose information that would lead to the identification of the CI.

The HRE Rule 510(c)(3) exception also did not apply to this case. The HRE Rule 510(c)(3) exception applies only in cases where the judge believes that the CI is not reliable or credible. In this case, the record does not reflect that the judge was not satisfied with the information provided by the CI. Accordingly, inasmuch as the record is silent as to any challenge to the credibility or reliability of the CI by the circuit court, the HRE Rule 510(c)(3) exception did not apply and the prosecution had the privilege to refuse to disclose information that would lead to the identification of the CI.

B. *THE IDENTITY OF THE CI WAS PRIVILEGED PURSUANT TO HRPP RULE 16.*

The prosecution also argues that it was not required to disclose information in the Nakagawa affidavit that might identify the CI pursuant to HRPP Rule 16(e)(5)(ii). We agree.

HRPP Rule 16(e)(5)(ii) states:

*Informants. Disclosure of an informant's identity shall not be required where the informant's identity is a prosecution secret and a failure to disclose will not infringe the constitutional rights of the defendant.* Disclosure shall not be denied hereunder of the identity of a witness intended to be produced at a hearing or trial.

(Emphasis added).

In the case at bar, the circuit court ruled that Kapiko's constitutional rights would be infringed if the dates of the CI's observations were not disclosed because: (1) his due process right to a fair trial, as guaranteed by the fourteenth amendment to the United States Constitution and article I, section 5 of the

Hawai'i Constitution would be violated because he could not challenge the district court's finding of probable cause without the dates in the Nakagawa affidavit; and (2) his constitutional right to effective assistance of counsel, as guaranteed by the sixth amendment to the United States Constitution and article I, section 14 of the Hawai'i Constitution would be violated because, without the dates in the Nakagawa affidavit, Kapiko's attorney would be unable to file the appropriate pre-trial motions and prepare for trial. We disagree with the circuit court's rulings.

### 1. KAPIKO'S DUE PROCESS RIGHT TO A FAIR TRIAL WOULD NOT BE VIOLATED.

In determining whether information regarding a CI must be disclosed, Hawai'i courts use the following test, as set forth by the United States Supreme Court:

Whether a proper balance renders nondisclosure erroneous must depend on the particular circumstances of each case, taking into consideration the crime charged, the possible defenses, the possible significance of the informer's testimony, and other relevant factors.

*State v. Davenport,* 55 Haw. 90, 102, 516 P.2d 65, 73 (1973) (quoting *Roviaro v. United States,* 353 U.S. 53, 62, 77 S.Ct. 623, 1 L.Ed.2d 639 (1957)).

In cases subsequent to *Roviaro,* we required disclosure of the identity of the CI where the CI was a participant in the crime or a material witness. *State v. Texeira,* 50 Haw. 138, 145, 433 P.2d 593, 599 (1967) (citing *Miller v. United States,* 273 F.2d 279 (5th Cir.1959), *cert. denied,* 362 U.S. 928, 80 S.Ct. 756, 4 L.Ed.2d 747 (1960)). *See also Bullen,* 63 Haw. at 32, 620 P.2d at 731 (where the CI has been an active participant in the crime charged and his testimony might be helpful to the defense, fairness dictates his identity be disclosed by the government). However, we also noted in *Davenport, supra,* that where the CI was not involved with the crime charged, his identity was not required to be released to the defense, because the CI's testimony was not crucial to the issue of guilt:

It is clear that the prosecution did not base its case against the defendant on any

activity he might have undertaken in the presence of the informer, but rather on evidence of the defendant's knowing constructive possession of the drugs on the morning of the search. [Under] the circumstances, we cannot say that the "possible significance of the informer's testimony" to the defense outweighed the "public interest in protecting the flow of information."

*Id.* at 102–3, 516 P.2d at 73 (citation omitted).

In this case, Kapiko was not charged with any offenses based on the information supplied by the CI to the police, the CI was not an active participant in the offenses charged, and the CI was not going to be called by the prosecution to testify at Kapiko's trial. The charges for possession of the drugs and drug paraphernalia depended on the circumstances at the time the search warrants were executed, and not on any information supplied by the CI.

Kapiko contended that he needed to know the period of time in which the CI's observations were made in order to address the issue of possible staleness. However, in order to address this issue, it was not necessary for Kapiko to have the specific dates of the CI's observations. Instead, the circuit court should have allowed Officer Nakagawa to testify to a range of dates within which the CI's observations occurred. This would have allowed the prosecution to reveal the information to Kapiko in a manner that would decrease the risk of leading to the identification of the CI. Courts in other jurisdictions do not require the prosecution to turn over the exact dates of a CI's observations in an affidavit in support of a search warrant.

The contention that the affidavit is insufficient in regard to the date the information was received from the informant, and in regard to the date the informer obtained his information, is not well founded. The affidavit is positive and definite in that it states the informant had "recently" seen defendant in póssession of narcotics at both the East Sheridan address and in the Fiat automobile. Any more definite time might reveal the identity of the informant.

*State v. Jung,* 19 Ariz.App. 257, 506 P.2d 648 (Ariz.Ct.App.1973) (citation omitted). Additionally, "while an affidavit must contain a

**404**

sufficient statement of the time of the events relied upon to establish probable cause, it is not necessary that the timing of these events be delineated with exactitude[.]" *People v. Ball,* 639 P.2d 1078 (Colo.1982) (citations omitted).

 In the face of a defense challenge that a CI's observations may be stale, but disclosure of the exact dates would reveal the identity of the CI, the prosecution should be ordered to provide a range of dates within which the observations occurred. The reviewing court, in determining staleness, must treat the observations as occurring on the most remote date within the time period. We adopt the rule, espoused in *United States v. Dauphinee,* 538 F.2d 1, 5 n. 7 (1st Cir. 1976), that "for the purpose of determining whether the information was stale we assume that the observation occurred at the most remote date within that time span."

Therefore, the exact dates of the CI's observations were not necessary in order for Kapiko to challenge the district court's finding of probable cause, and, because revealing the dates would lead to the identification of the CI, we cannot say that the "possible significance of the [exact dates] to the defense" outweighed the "public interest in protecting the flow of information." It was not a violation of Kapiko's due process right to a fair trial for the prosecution to refuse to reveal the dates to Kapiko.[6] Revealing a range of ·dates strikes a median ground between revealing the exact dates and dismissing the complaint.

2. *KAPIKO'S CONSTITUTIONAL RIGHT TO EFFECTIVE ASSISTANCE OF COUNSEL WOULD NOT BE VIOLATED IF KAPIKO WERE TO RECEIVE A RANGE OF DATES INSTEAD OF THE ACTUAL DATES OF THE CI'S OBSERVATIONS.*

 Previously, in part III.B.1, we noted that the exact dates of the CI's observations

were privileged and that instead of compelling the prosecution to reveal the exact dates, which might lead to the identification of the CI, the circuit court should have ordered the prosecution to reveal a range of dates during which the CI could have made the observations. The circuit court in its findings of fact and Kapiko in his motion to suppress do not explain how not knowing the exact dates of the CI's observations would infringe upon Kapiko's constitutional right to effective assistance of counsel. With a range of dates, Kapiko could challenge the search warrant on staleness grounds. The remaining information in the Nakagawa affidavit would be revealed to him. Therefore, Kapiko could have challenged the validity of the search warrant without the exact dates of the observations. Accordingly, as Kapiko's attorney could file the appropriate pre-trial motions and prepare for trial without the exact dates, Kapiko's sixth amendment right to effective assistance of counsel was not violated.

## IV. *CONCLUSION*

For the foregoing reasons, we vacate the circuit court's findings of fact, conclusions of law, and order, filed September 15, 1997, granting the oral motion to dismiss the complaint with prejudice and remand for further proceedings.

reveal this information did not infringe on Kapiko's constitutional rights because Kapiko did not need this information (a) to challenge the district court's finding of probable cause, (b) to challenge the Nakagawa affidavit as stale, (c) to prepare pre-trial motions, or (d) to prepare for trial.

---

**6.** We note that the prosecution, in addition to redacting the dates of the CI's observations, also redacted the CI's observations regarding Kapiko's possession of a shotgun. This information did not need to be revealed to the defense because: (1) this information could have led to the identification of the CI; and (2) the failure to