80 P.3d 1012

**STATE of Hawai'i, Plaintiff–Appellant,**

v.

**Fred Masami KIYABU and Taira Elizabeth Ursua, Defendants–Appellees.**

**No. 24658.**

Intermediate Court of Appeals of Hawai'i.

Nov. 21, 2003.

---

Mangmang Qiu Brown, Deputy Prosecuting Attorney, City and County of Honolulu, on the briefs, for plaintiff-appellant.

Lane Y. Takahashi, on the briefs, for defendant-appellee, Fred Masami Kiyabu.

Joyce Matsumori–Hoshijo, Deputy Public Defender, on the briefs, for defendant-appellee Taira Elizabeth Ursua.

WATANABE, Acting C.J., LIM and FOLEY, JJ.

Opinion of the Court by FOLEY, J.

## I.

On November 14, 2000 Defendant–Appellee Fred Masami Kiyabu (Kiyabu) was charged by complaint with the following:

Count I, Promoting a Dangerous Drug in the Third Degree in violation of Hawaii Revised Statute (HRS) § 712–1243 (1993 & Supp.2001),[1] and Count II, Unlawful Use of Drug Paraphernalia in violation of HRS § 329–43.5(a) (1993).[2]

---

1. HRS § 712–1243 (1993 & Supp.2001) provides:

§ 712–1243 **Promoting a dangerous drug in the third degree.** (1) A person commits the offense of promoting a dangerous drug in the third degree if the person knowingly possesses any dangerous drug in any amount.

(2) Promoting a dangerous drug in the third degree is a class C felony.

(3) Notwithstanding any law to the contrary, if the commission of the offense of promoting a dangerous drug in the third degree under this section involved the possession or distribution of methamphetamine, the person convicted shall be sentenced to an indeterminate term of imprisonment of five years with a mandatory minimum term of imprisonment, the length of which shall be not less than thirty days and not greater than two-and-a-half years, at the discretion of the sentencing court. The person convicted shall not be eligible for parole during the mandatory period of imprisonment.

2. HRS § 329–43.5(a) (1993) reads as follows:

§ 329–43.5 **Prohibited acts related to drug paraphernalia.** (a) It is unlawful for any person to use, or to possess with intent to use, drug paraphernalia to plant, propagate, cultivate, grow, harvest, manufacture, compound, convert, produce, process, prepare, test, analyze, pack, repack, store, contain, conceal, inject,

In the same complaint Taira Elizabeth Ursua (Ursua) was charged with:

Count III, Promoting a Dangerous Drug in the Third Degree in violation of HRS § 712–1243 (1993 & Supp.2001),[3] and

Count IV, Unlawful Use of Drug Paraphernalia in violation of HRS § 329–43.5(a) (1993).[4]

On April 16, 2001, Ursua filed a Motion to Suppress Evidence (Motion to Suppress), in which Kiyabu filed a joinder on April 20, 2001. The Circuit Court of the First Circuit (circuit court)[5] granted the Motion to Suppress, and Plaintiff–Appellant State of Hawai'i (State) appeals from the circuit court's October 10, 2001 Findings of Fact, Conclusions of Law, and Order Granting Defendant's Motion to Suppress Evidence. On October 15, 2001, the circuit court issued an Order Denying State's Motion to Reconsider Order Granting Defendant's Motion to Suppress Evidence. Hawaii Revised Statutes § 641–13(7) (1993)[6] allows the State to appeal in criminal cases from a pretrial order granting a defendant's motion to suppress evidence.

The State argues that the circuit court erred (1) in granting the Motion to Suppress without conducting proper fact-finding on the issue of staleness of information provided by the confidential informant (CI); (2) in determining the issue of staleness, without considering, upon an *in camera* review, multiple factors besides the range of dates provided by the State; and (3) in not allowing the State to provide a narrower range of dates during which the CI made the privileged observations. We hold that, prior to granting the Motion to Suppress, the circuit court should have reviewed, *in camera*, the affidavit that was the basis of the district court judge's determination of probable cause for the search warrant.

## II.

On November 1, 2000, Detective Ray Struss (Detective Struss) presented to District Court Judge Gerald Kibe a search warrant and an affidavit in support of the warrant[7] (the affidavit) to search the premises at 98–340 Koauku Loop # 126, Aiea, Hawai'i. Upon finding that probable cause existed, Judge Kibe approved the issuance of the search warrant and found that sufficient grounds existed to seal the affidavit in order to protect the CI and the ongoing investigation. On November 4, 2000, the search warrant was executed, and Ursua and Kiyabu were found in the residence, along with methamphetamine and drug paraphernalia, and arrested.

On February 5, 2001, Ursua filed a Motion to Compel Discovery of Confidential Informant and Further Discovery. At the hearing on the motion,[8] Ursua made an oral request for a range of dates during which the CI could have made the privileged observations. The circuit court denied Ursua's motion to compel discovery of the CI's identity, but granted Ursua's oral request to provide the range of dates during which the CI could have made the observations described in the affidavit in support of the search warrant.

ingest, inhale, or otherwise introduce into the human body a controlled substance in violation of this chapter. Any person who violates this section is guilty of a class C felony and upon conviction may be imprisoned pursuant to section 706–660 and, if appropriate as provided in section 706–641, fined pursuant to section 706–640.

3. *See supra* note 1.

4. *See supra* note 2.

5. The Honorable Wilfred K. Watanabe presided.

6. HRS § 641–13(7) (1993) provides as follows:

§ 641–13 **By State in criminal cases.** An appeal may be taken by and on behalf of the State from the district or circuit courts to the supreme court, subject to chapter 602 [Courts of Appeal], in all criminal cases, in the following instances:

. . . .

(7) From a pretrial order granting a motion for the suppression of evidence, including a confession or admission, or the return of property in which case the intermediate appellate court or the supreme court, as the case may be, shall give priority to such an appeal and the order shall be stayed pending the outcome of the appeal[.]

7. The affidavit is not part of the record before this court.

8. The Honorable I. Norman Lewis presided.

In response, the State sent a letter dated February 13, 2001 to defense counsel, stating that the range of dates during which the CI could have made the observations leading to the issuance of the search warrant was June 1, 2000 through November 4, 2000.

Ursua then filed the Motion to Suppress the evidence seized from the residence, alleging that, based on the earliest date in the range provided, the information establishing probable cause for the search warrant was stale.

In its Memorandum in Opposition to Defendant Ursua's Motion to Suppress Evidence, filed May 24, 2001, the State asked the circuit court to review, *in camera*, the sealed affidavit "to make a staleness determination, and to fix the scope of discovery (if any) on those items sought." During the hearing on the motion, the State asked the circuit court to speak to Detective Struss *in camera* regarding the facts and circumstances surrounding the CI. In the alternative, the State asked the circuit court to order the State to provide a smaller range of dates. The court took the matter under advisement.

On July 2, 2001, the State was verbally notified that the circuit court was granting the Motion to Suppress. On July 18, 2001, the State filed a motion for reconsideration, offering to narrow the range of dates to October 4 to November 4, 2000 and again asking the circuit court to review the affidavit *in camera* and/or to hear testimony from Detective Struss. The circuit court denied the motion for reconsideration without reviewing the affidavit or hearing Detective Struss's testimony.

In its order granting the Motion to Suppress, the circuit court found that "[t]he five months time period between the observations of the confidential informant and the issuance of the search warrant renders the information stale for purposes of probable cause." The circuit court found the search illegal and suppressed the evidence.

## III.

The State contends the circuit court erred when it failed to consider, upon an *in camera* review, multiple factors besides the range of dates provided by the State to determine whether the probable cause supporting the search warrant was stale.

Ursua initially sought the identity of the CI who supplied the intelligence upon which the search warrant was issued. The circuit court denied this motion, but granted Ursua's oral request that the State provide a range of dates during which the CI could have made the privileged observations. At this point, both the State and defense requested that the circuit court view the sealed affidavit *in camera;* however, the court denied this request, stating that it would not be necessary because the State had indicated it would not be using the CI in trying the case.

Based on the range of dates in the State's February 13, 2001 letter, the circuit court granted the Motion to Suppress, finding that the information used to establish probable cause for the search warrant was stale and therefore all evidence obtained from the execution of the search warrant was suppressed. Pursuant to *State v. Kapiko,* 88 Hawai'i 396, 404, 967 P.2d 228, 236 (1998), the circuit court treated the observations as occurring on the earliest date provided in the range of dates. However the circuit court refused to review, *in camera*, the affidavit of Detective Struss that, the State contends, would have shown the information from the CI was not stale.

The Hawai'i Supreme Court has "admonished that a reviewing court 'should accord considerable weight to the admittedly unbiased judgment of the district magistrate [now district judge] who issue[s a search] warrant.'" *State v. Austria,* 55 Haw. 565, 567, 524 P.2d 290, 292 (1974) (quoting *State v. Davenport,* 55 Haw. 90, 98, 516 P.2d 65, 71 (1973)). This rule of review is derived from the federal and state constitutions' expression of partiality for the police practice of obtaining prior judicial approval of a search or arrest warrant before conducting a search or arrest. *Austria,* 55 Haw. at 567, 524 P.2d at 293; *see also United States v. Ventresca,* 380 U.S. 102, 105–09, 85 S.Ct. 741, 744–46, 13 L.Ed.2d 684 (1965).

While *Kapiko* stands for the proposition that a reviewing court, in determining staleness, must treat the CI's observations as if they occurred on the most remote date in the range of time provided by the State, *Kapiko* does not direct the reviewing court to ignore other relevant information that would aid the court in determining if the information provided by the CI was in fact stale.[9] According to the State, this information was contained in the affidavit of Detective Struss, reviewed by District Court Judge Kibe prior to issuing the search warrant, but ignored by the circuit court in granting the Motion to Suppress the same warrant.

The *Kapiko* court adopted the holding in *United States v. Dauphinee*, 538 F.2d 1, 5 n. 7 (1st Cir.1976), which stated, "for the purpose of determining whether the information was stale we assume that the observation occurred at the most remote date within that time span." *Kapiko*, 88 Hawai'i at 404, 967 P.2d at 236. The *Dauphinee* court in explaining its holding wrote:

> It is well established that the temporal proximity or remoteness of the events observed has a bearing on the validity of a warrant. But no hard and fast rule can be formulated as to what constitutes excessive remoteness, because each case must be judged in its circumstantial context. Factors like the nature of the criminal activity under investigation and the nature of what is being sought have a bearing on where the line between stale and fresh information should be drawn in a particular case.

538 F.2d at 5 (citations omitted).

Detective Struss presented the search warrant and affidavit in support of the search warrant to Judge Kibe. Judge Kibe found that probable cause existed, approved issuance of the search warrant, and found that sufficient grounds existed to seal the affidavit in order to protect the CI and the ongoing investigation. The circuit court erred in rejecting the probable cause finding of Judge Kibe without reviewing the affidavit that was the basis of Judge Kibe's probable cause determination. The Hawai'i Supreme Court

has stated that "if the facts contained in an affidavit, taken together with all reasonable inferences from those facts, support the existence of probable cause, circuit courts and this court are constrained to uphold that finding by a district judge even though other inferences from the facts might point to an opposite conclusion." *Austria*, 55 Haw. at 568, 524 P.2d at 293. At a minimum, the circuit court must review the affidavit reviewed by the district court.

By refusing to review the affidavit of Detective Struss, the circuit court rendered meaningless the procedures set forth under Hawaii Rules of Evidence (HRE) Rule 510(c)(3):

**Rule 510   Identity of informer.**

. . . .

(c) Exceptions.

(3) Legality of obtaining evidence. If information from an informer is relied upon to establish the legality of the means by which evidence was obtained and the judge is not satisfied that the information was received from an informer reasonably believed to be reliable or credible, the judge may require the identity of the informer to be disclosed. The judge shall, on request of the government, direct that the disclosure be made in camera. All counsel and parties concerned with the issue of legality shall be permitted to be present at every stage of proceedings under this paragraph except a disclosure in camera, at which no counsel or party shall be permitted to be present. If disclosure of the identity of the informer is made in camera, the record thereof shall be sealed and preserved to be made available to the appellate court in the event of an appeal, and the contents shall not otherwise be revealed without consent of the government.

In *State v. Swafford*, 68 Haw. 653, 729 P.2d 385 (1986), where it was HRE Rule

---

9. In *Kapiko*, the reviewing court did inspect the detective's sealed affidavit *in camera*. 88 Hawai'i at 399, 967 P.2d at 231.

510(c)(2) [10] not HRE Rule 510(c)(3) at issue, the Hawaiʻi Supreme Court stated "that an *in camera* hearing is *mandatory* prior to ordering disclosure of a confidential informant's identity or ordering dismissal of an indictment." 68 Haw. at 657, 729 P.2d at 387–88 (emphasis in original). By granting the Motion to Suppress, the circuit court, in effect, dismissed the indictment.[11] In *Swafford,* the court emphasized that when "the government invokes the privilege, *the judge shall give the government an opportunity to show in camera facts relevant*" to the determination. *Id.* (emphasis in original). In light of the opportunity afforded the State by *Swafford* with respect to HRE Rule 510(c)(2), the same opportunity should have been afforded the State under HRE Rule 510(c)(3).

Other jurisdictions have held that an *in camera* review is the proper method to determine if the information from the CI was sufficient to establish probable cause for an arrest or search warrant. *See State v. Hosey,* 132 Idaho 117, 119, 968 P.2d 212, 214 (1998) (ordering that "[t]o determine the extent of the informer privilege, the trial court must conduct an *in camera* examination of the evidence"); *People v. Brown,* 256 Cal. Rptr. 11, 15, 207 Cal.App.3d 1541, 1548 (1989) (explaining that where a CI is involved and defendant challenges the affidavit supporting the search warrant, the court must conduct an *in camera* hearing to determine if CI's identity should be kept confidential; if so, court must examine CI and other evidence to determine if the affidavit in support of the search warrant contains false or reckless statements); *People v. Darden,* 34 N.Y.2d 177, 181, 313 N.E.2d 49, 52, 356 N.Y.S.2d 582, 585–86 (1974) (holding that where there is insufficient evidence to establish probable cause and the issue of the CI's identity is raised at a suppression hearing, the judge should conduct an *in camera* inquiry).

Ursua and Kiyabu argue that HRE Rule 510(c)(3) is not applicable in this case "inasmuch as the record is silent as to any challenge to the credibility or reliability of the CI by the circuit court," citing *Kapiko,* 88 Hawaiʻi at 402, 967 P.2d at 234. In *Kapiko,* the circuit court reviewed the unredacted copy of the police officer's affidavit in support of the search warrant that contained information supplied by the CI. *Id.* at 399–400, 967 P.2d at 231–32. Additionally, *Kapiko* found that the record in the case did "not reflect that the judge was not satisfied with the information provided by the CI." *Id.* at 402, 967 P.2d at 234.

In the instant case, the circuit court judge never reviewed the information provided by

**10.** HRE Rule 510(c)(2) provides as follows:

> **Rule 510   Identity of informer.**
> . . . .
> (c) Exceptions.
> (2) Testimony on merits.  If it appears from the evidence in the case or from other showing by a party that an informer may be able to give testimony necessary to a fair determination of the issue of guilt or innocence in a criminal case or of a material issue on the merits in a civil case to which the government is a party, and the government invokes the privilege, the judge shall give the government an opportunity to show in camera facts relevant to determining whether the informer can, in fact, supply that testimony. The showing will ordinarily be in the form of affidavits, but the judge may direct that testimony be taken if the judge finds that the matter cannot be resolved satisfactorily upon affidavit.  If the judge finds that there is a reasonable probability that the informer can give the testimony, and the government elects not to disclose the informer's identity, the judge on motion of the defendant in a criminal case shall dismiss the charges to which the testimony would relate, and the judge may do so on the judge's own motion. In civil cases, the judge may make any order that justice requires.  Evidence submitted to the judge shall be sealed and preserved to be made available to the appellate court in the event of an appeal, and the contents shall not otherwise be revealed without consent of the government.  All counsel and parties shall be permitted to be present at every stage of proceedings under this paragraph except a showing in camera, at which no counsel or party shall be permitted to be present.

**11.** By stating in its order granting the Motion to Suppress that "[t]he evidence obtained from the execution of the search warrant must be suppressed and any evidence subsequently obtained from the illegal search or seizure, must also be suppressed as tainted 'fruit of the poisonous tree,'" the circuit court rendered any attempt at prosecution fruitless.  The circuit court recognized that Ursua's and Kiyabu's charges stemmed from the items found during the execution of the search warrant.

the CI. Therefore, the circuit court judge was in no position to evaluate whether "the information was received from an informer reasonably believed to be reliable or credible." The court must, at a minimum, review such information when requested to do so by the State.

We vacate the circuit court's order granting the Motion to Suppress and remand this case to the circuit court to review the sealed affidavit of Detective Struss, *in camera*, pursuant to HRE Rule 510(c)(3). The circuit court shall reconsider the Motion to Suppress in light of the information contained in Detective Struss's affidavit.

**IV.**

Accordingly, the circuit court's October 10, 2001, Findings of Fact, Conclusions of Law, and Order Granting Defendants' Motion to Suppress Evidence is vacated, and this case is remanded to the circuit court.